JOHN A. BANCROFT & Co. *v.* THE WILMINGTON CONFERENCE ACADEMY.

The secretary, and as such the keeper of the books, of an incorporated company, who is counsel for it in the trial of a case against it in court, is not a competent witness in it.

For the transaction of any business of an incorporated company which requires no seal, the company may appoint an agent without the use of its corporate seal, or of any writing even, the same as a natural person may, for such business, and no preceding appointment of the agent by the company for the transaction of it is necessary if it is subsequently sanctioned either directly or indirectly by the company.

ASSUMPSIT for goods sold and delivered, consisting of school-room furniture, such as chairs, desks, and blackboards, ordered by and furnished to the principal of the school in the academy and put into and used in it, of which, under his contract with the trustees of the institution and incorporation, he was to have all the receipts without any remuneration to them.

*Day*, for the defendant, on the proof of these facts and the resting of his case by the counsel for the plaintiffs, moved a nonsuit because sufficient proof had not been produced that the principal of the academy, as he styled himself in his examination as a witness, was the agent of the corporation for the purpose of contracting the bill in question, or had authority as such to bind the corporation for the payment of it. The court cannot judicially notice that a corporation has authority to appoint an agent for any purpose without, at least, the production of its charter and by-laws which show it. *Ang. & Ames on Cor.*, sec. 277; 13 *N. H.* 352; 10 *Pick.* 325; 4 *Greenl.* 44; 5 *Wheat.* 420; 17 *Mass.* 1; 8 *Mass.* 291.

*The Court,* without hearing the counsel on the other side, overruled the motion for a nonsuit.

*Day* then offered himself, as the secretary of the company and the official keeper and custodian of its books and record of proceedings, as a witness for the defendant to prove that another person constituted its appropriate and duly appointed agent for the purpose of attending to and transacting such business.

*But the Court* declined to admit him because he was then of counsel for the corporation in the case, and was not the only person who could prove its books and record of proceedings.

Another person was then called as a witness by him who proved that the Rev. Mr. Hutchins was the duly appointed agent of the trustees and the institution during the years 1874 and 1875, and Rev. Mr. Williams was during the same time the superintendent of the academy, but never was the agent of the trustees to procure furniture for its school apartments, and during that time the bill in question was contracted.

The act of limitations had been pleaded, but was now withdrawn.

The grounds taken by the respective counsel in the argument of the case before the jury will appear from the charge of the court.

*The Court, Comegys, C. J., charged the jury* as follows: This is a suit by the late firm of John A. Bancroft & Co. against the Wilmington Conference Academy to recover the sum of eighty-nine dollars and forty-one cents, the amount of a bill of goods alleged to have been sold by the plaintiffs to the defendant, at two different times, in the fall of 1874. The defendant is a corporation of this State duly created by law, and transacts its business, which is that of maintaining a public school in this town, and the goods referred to are three teachers' desks, three wood arm-chairs on pivots, and seven blackboards, all such as are necessary for a school of the character of that kept by the defendant or under its authority. It is not disputed that the articles mentioned were sent from Philadelphia, where they were purchased, at or about the time of their purchase, that they were received at the Academy, that they have been there or with the property of the corporation ever since, and that they are now in the academy building. It would seem, then, that the defendant ought to pay the plaintiffs for these goods; but there is refusal to do so upon the ground that they were purchased without the authority or knowledge of the defendant, and that the defendant does not recognize them as its property. The counsel for the defendant therefore asks the court to charge the jury that to make the defendant liable in this case it must appear that the witness, Mr. Williams, who bought the goods, was the agent of the defendant at the time; and he insists that as it appears from the minute book of the corporation, in evidence before you, that the president and three of the board of trustees were authorized to perform that service, it must appear that the witness was appointed in like manner and that such fact can only be shown by the records of the academy; and he has cited authorities in support of his prayer. On the side of the plaintiffs we are asked to charge you that formal action by the corporation was not necessary for the appointment of Mr. Williams as agent to buy these goods, nor, in fact, was any appointment whatever necessary as a precedent act on the part of the defendant, but that the goods having, as he contends, gone into its possession, it is as much liable to the plaintiffs for their value as if the party buying had been clothed with authority the most

formal for that purpose ; and he has furnished us with authorities in support of his view of the case.

No one can be held bound upon a contract unless he make it or authorize some one to make it for him. If he take the latter course he is said to act by an agent. This is all very plain, and we say to you that unless some statute require it, or some act is to be performed requiring a seal, no form of writing is necessary for the appointment of an agent, or writing at all, but he may be appointed by mere words or word of mouth. In other words, in all the ordinary, every-day transactions of men, agency may be created without any formality. In all cases of agency the fact of its existence may be proved and must be proved in suits against the principal where there is writing by the writing—for no man is to be held for the contract of his agent acting beyond the scope of his authority—and where there is no writing by verbal proof. When agency is thus established by proof, the subject of it, the agent, has the same power precisely within the scope of his authority as the creating authority, called the principal, has. If, therefore, the agent should be authorized by a writing under seal duly acknowledged according to the statute to make a conveyance of real estate however valuable, the deed executed by such agent in conformity with the terms of the writing, or power, would be as effectual to pass the title of such estate as if signed and sealed by the principal himself. So also if he were authorized by words only to make a purchase or sale of personal property, his act in buying or selling, provided he kept within the limit or scope of his authority, would be as valid and effectual a contract of purchase or sale as if his principal had done the dealing himself. The agent, acting as such strictly—that is, not transcending his authority—stands in the place and stead of his principal, and for the transaction performed is in law the same as the principal. This is no new law in this State, but has been announced by this court over and over again, and in every case where the question of agency arose and called for such expression.

The facts of this case seem to be the following, in substance : The witness, the Rev. Mr. Williams, was employed by the

defendant to conduct its business of instructing youth, and resided with his family in the building owned by it, without any accountability for rent, and with the privilege of making what he could by the school—the defendant supplying the necessary furniture, etc., for school purposes. While he was so engaged, and other furniture being desired, the board of trustees, in whose general charge the affairs of the corporation were by the act of incorporation, appointed three of their number to act with their president in the purchase, if necessary, of such furniture, by a resolution or order adopted, as appears by the minutes, on the 17th day of June, 1874. In the month of September of that year one of the trustees and Mr. Williams visited several places in Philadelphia to look at and price such things as were needed, and went to the store of the plaintiffs in the first instance. As the goods of the plaintiffs were not acceptable on account of price, the other stores were resorted to. No goods whatever were bought while the trustee was present, but two bills were made by Mr. Williams, one with Milton Jackson, which the defendant paid, and the other with the plaintiffs, which has not been paid and the defendant refuses to pay it. In each case the goods were duly sent forward by the merchants and were received at the academy building and put into use as part of the equipment of the school. The defendant by its payment of the bill of Milton Jackson adopted the act of Mr. Williams in making the purchase. Such adoption by payment is of the same significance in effect as if he had been appointed by special act of the defendant beforehand to make the purchase. If a man adopt the act of another made in his behalf, though without any authority for so doing, it has the same effect precisely as if he had originally ordered or authorized it. The adoption makes it his own—and though no sort of agency to do the act existed at the time it was done. The want of original authority may be shown by the most indisputable proof, and yet the acceptance of the act done and enjoyment of its fruits will bind the party too strongly to be loosed by technicalities or plea of want of original power. There can be no ground to dispute this proposition, which is founded in that pure system of morality which underlies our common-law system as well as that of equity.

Besides, the books are full of cases in support of it were any to deny it.

Having given you an exposition, briefly, of the general law of agency and its application to cases like the present is claimed to be by the plaintiffs' counsel, we come now to the very matter in hand or question which you are to decide—for it is but one, there being no contest about the value of the goods sold by the plaintiffs, nor dispute that they reached the building of the defendant and were incorporated with their other school furniture—the latter fact is sworn to by Mr. Williams, and his testimony is not gainsaid. Upon what ground, therefore, you ask, does the defendant resist payment for the goods? Upon this ground—that the witness had no authority to make the purchase, of which the defendant was entirely ignorant until suit was brought upon the bill, or shortly before that time—his counsel averring that the conversation with Mr. Massey, stated in the argument of that gentleman, was understood by him to apply to the bill of Milton Jackson, which was paid as I have stated. Of course, the declaration of the defendant's counsel is not evidence at all; but at the same time you must not lose sight of the fact that Mr. Massey is not absolutely clear that he gave the names of his client, though he thinks he did; but he does remember that the bill was mentioned by him as one for school furniture. So was the one paid; and therefore Mr. Day may have had that bill in his mind in his assurances that it should be paid. That is a matter which, among others, we leave to you. The defendant's ground then is, that though the goods were in fact sent to the academy and mixed with its other furniture, yet the defendant is not liable for them, he having given no authority to buy them. Besides, he claims that the defendant had no knowledge that any such goods were received at the school. This brings us to the consideration of a point very strongly insisted upon by the defendant's counsel—which we take to be this—that this corporation had no right to appoint an agent otherwise than by the act of its board of trustees, much less to adopt the service of a volunteer, as it is insisted Mr. Williams was, and bind the corporation thereby. But be that as it may, having acted in the business of making appointment of agent in

the persons of the three trustees and president, and that fact appearing by its record, and no appointment of Mr. Williams appearing thereby, no proof of agency on his part can be made by parol or verbal testimony, and therefore no responsibility of the defendant can arise or be supported by the plaintiffs.

As a general proposition, it may be stated that a corporation can only act by its seal. It is an invisible body, purely a creature of statutory creation, having neither form nor essence, but existing nevertheless, and possessed of very great power. In the case of this corporation defendant there seems by the act of its creation to be ample powers to carry on a public school and own property of great value for that purpose. These bodies are made up of one or more individual living persons; they compose them, but the body itself is a distinct thing. Were it not, those who compose it might unite and do a corporate act; whereas they cannot, but the corporate act must be done by the invisible body. How then does this body act? The answer is, by its seal; and this is true of corporations as a general principle and is not to be controverted. But in the progress of time and in the increase of the affairs of men, and the necessity in large and complex enterprises where associations of men with their capital become necessary, and the business multifarious and less simple than the transactions of men originally were, it became impracticable to use the seal of corporations in all of their transactions; but their ordinary business came to be performed by agents or officers without such formality, employing the corporate seal only in the doing of strictly corporate acts, or such as by law can only be done by a natural person by seal. There is, as we all know, a vast mass of business, some of it of the highest importance, which is transacted by officers of corporations without any authority under seal, and oftentimes in writing even. Nor are these acts such as come within the authority of the office of the agent. As an illustration I may speak of the satisfaction of judgments by cashiers of banks, who usually have no authority in writing for that purpose, and act simply from usage, and, in fact, convenience. This is a very important act, the discharging a debt of record by indorsement of the cashier, and yet no court would allow his right to do so

to be questioned upon any ground of want of authority under seal or in writing. Proof of usage by the bank or adoption of the officer's act would be held sufficient without showing any authority for the power exercised. A much stronger case is that of transfer of a judgment to a co-debtor or co-surety who had paid the debt; and here this court, should such a case arise before it, would not allow the bank to disclaim the act on the ground that the officer had no written or verbal authority. Usage in the conduct of the business of the bank in such cases would be sufficient authority, and no impeachment of it would be allowed except upon the ground of fraud. Other illustrations might be given of the performance of acts for a corporation without written, or, in fact, any verbal authority; but it is conceived that enough has been said to enable you to understand what is meant with respect to the management of its business by a corporation. The truth is that within a comparatively few years past the law of corporations has undergone very many material changes with respect to their mode of action. Corporate seals, which were anciently the only proof of their acts, are now only used in what I may call the most solemn cases, the conveyance of title, release of liens, making of formal contracts requiring from individuals the use of seals, etc. They have become so common, and their business so like that of natural persons, that the law, with that wisdom which has ever characterized the courts in the adaptation of it to the changing relations of human affairs, has been modified and shaped so as to conform it to the exigency of human affairs with which it had concern. Therefore it is that we now find many things done by the mere agents or servants of corporations, and recognized as legal, which in former years, and not so far back as the date of some of the valuable authorities cited by the learned counsel of the defendant in his argument addressed to the court, were not. Every few years changes of an important character take place in corporation law by judicial construction or decision; in fact, since the case chiefly relied upon by him, *Salem Bank* v. *Gloucester Bank*, 17 *Mass.* 1, decided near sixty years ago, it has been so molded and shaped by necessity to promote the convenient administration of corporate affairs, that but for certain expressions and the peculiar

nature of the being or creature itself, the law now applying to it could hardly be distinguished in any respect from that applying to individuals. There is, therefore, nothing in the general law of corporations as now administered requiring them to appoint an agent to perform any ordinary service by writing under seal, or by writing at all; nor is there any law by which a corporation is not as much bound for the acts of those whom it employs as an individual person is. It would be very hard indeed if every one, before he could engage in the most trivial transaction with a servant of a corporation with respect to anything that concerned it, should be held to an inquiry into his authority, any more than in the case of the servant or agent of an individual. Corporations are too common now and transact too many of the simplest affairs of life to make such a requirement reasonable.

Having given you to understand, as we best could, the law of agency generally, and having also informed you that such law applies as well to corporations as to persons, you have then to determine whether Mr. Williams, in buying the furniture supplied by the plaintiffs, was acting as the agent of the defendant. No direct authority is shown for him, but he purchased of another merchant at that time goods of like character as those for which the plaintiff sues, and which were paid for by the defendant; and he was accompanied in his round of examination among the dealers in such goods by one of the committee appointed by the resolution before referred to. It is denied by the defendant, it is true, that the witness had any authority to act for or in its behalf, but the fact remains that one of the bills he made was paid without any demur whatever. This is a circumstance of importance not to be overlooked by you in considering this case. It appears, also, as has been stated before, that the goods which are the subject of the controversy before the court were duly sent to and received at the academy or place of business of the defendant, were put into use or mingled with the other furniture of the school, were in the building when it was burnt, but were rescued from it, afterward were used at another place where the school was conducted, were subsequently restored to the rebuilt structure, and are there at this time. They consist of three teachers' desks, as many wood chairs on pivots, and seven blackboards, one

37

of them six feet long by three and a half wide, all prominent articles calculated to attract the eye in a moment. Now it may be that these conspicuous articles were not observed by the trustees, and we must believe that they escaped the attention of that one of them who gave testimony upon that point before you. But would it not appear unreasonable that none of that body saw these valuable and striking articles? You are to judge of this. These pieces of school furniture were in the school building of the defendant four years after their purchase and before the bringing of the suit to recover for them. It is for you to say whether the board of trustees of the academy, or any but a very few of them, at least, could have been ignorant that they were other goods than those bought by Mr. Williams from Milton Jackson, and which they had paid for. These trustees or managers of the business of this corporation must be held, in all reason, to the same knowledge of facts concerning the property visibly in their possession as an individual would be. There is no law of this kind which does not equally apply to both.

Further, a man may adopt or ratify the act of another as his own, though he may never have directly or indirectly employed him to do it. If a person, without any authority whatever from one of you, gentlemen, should presume to sell your horse, although his act would be wholly unwarranted, you might, if you chose, confirm the transaction. It would be yours, then, by adoption, and you would be bound by it the same as if you had authorized it at first. Here there would have been no agency whatever, either express or implied in the first instance, and yet the adoption or recognition of the act would be the same as if the volunteer had been authorized to do the act by the most solemn instrument of writing. Nay, although the doing the act by the officious person had been expressly forbidden, yet if it had been accepted by the party he could not afterward escape from the effect of his adoption by disclaiming the authority of the person acting, or by proving that he was forbidden to act at all. It would be very hard if it were otherwise; because in such cases it would operate a fraud upon the innocent party who confided in the representations of the assumed agent whose acts were adopted by him whom he professed to serve.

The plaintiffs had a verdict.